## Lyons v. Commonwealth.

(Decided March 15, 1927.)

### Appeal from Harlan Circuit Court.

1.  Criminal Law—Instruction in Liquor Prosecution for Second Offense Held Erroneous, Where Not Requiring Finding that First Offense was Committed After Law Making Second Offense Felony was Effective (Rash-Gullion Prohibition Act).—Instruction in prosecution for possessing intoxicating liquors as second offense held erroneous in not requiring jury to believe beyond reasonable doubt that previous offense was committed after date that Rash-Gullion Prohibition Act (Acts 1922, c. 33), making second offense a felony, went into effect.

2.  Searches and Seizures—Search Warrant Held Not Defective for Describing House by Number, in Absence of Proof of Other Houses Bearing Same Number (Constitution, Section 10).—Search warrant, describing house to be searched solely as 224, located in certain town, held not defective, under Constitution, section 10, for insufficient description, in absence of proof showing there were other houses bearing same number within city.

3.  Criminal Law—Evidence Secured in Search of Occupant's Trunk Under Warrant for Search of House Held Competent Under Circumstances.—Evidence secured against occupant of house by search of trunk in his room under warrant authorizing search of house held competent under circumstances showing that trunk was not in exclusive possession of defendant, but was in common use within house.

G. G. RAWLINGS for appellant.

FRANK E. DAUGHERTY, Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

The appellant was indicted by the grand jury of Harlan county on the charge of having in his possession intoxicating liquor, being the second offense of violating the prohibition laws. The indictment charges that he had been previously convicted in August, 1925, of having whiskey in his possession in a magistrate's court, and that the offense for which he was convicted in the magistrate's court was committed after March 22, 1922, the date when the Rash-Gullion Act became a law, and before the commission of the offense with which he was charged in the first paragraph of the indictment. The proof, if competent, is amply sufficient to sustain the charge that appellant had whiskey in his possession at the time charged in the indictment. The facts brought out on the trial showed that a search warrant was issued based upon an affidavit as follows:

"The affiant, Walter Taylor, states that he is a reputable citizen and resident of Harlan county, Kentucky. He further states that spirituous and intoxicating liquors are now being kept in house No. 223, 224, 791, 882, 883, all in Lynch, all of which is in Harlan county, Kentucky, and that said liquor is not kept for sale for medicinal, scientific, sacramental or mechanical purposes."

The search warrant was issued by J. M. Huff, justice of the peace, and directed the sheriff or any constable to search the house or residence numbered as set out in the affidavit. The search warrant directed the officer to seize and take possession of any whiskey in said house or on said premises not used for medicinal, sacramental, mechanical or scientific purposes and to deliver it to the justice of the peace at his office as speedily as possible. No reason appears in the record why such speed was necessary or why the whiskey should be delivered to the justice of the peace. The search warrant directed the searching of five separate houses, as we gather from the evidence, although it would appear from reading the warrant that it was one house with five different numbers. The officer, Walter Taylor, who made the affidavit is the same man who made the search. He stated that he took another man with him and they searched No. 224, and he found in making the search 4½ gallons of whiskey in a.

trunk. The appellant was in the room where the trunk was found, and the witness stated that he lifted the trunk and heard the jars rattle and he then asked appellant for the key to the trunk, who gave it to him, and with it he unlocked the trunk and found the whiskey. When the search warrant was obtained the witness did not know where appellant lived and did not know that he was at No. 224 or at a room therein, and neither did he know when he testified whether appellant occupied a private room. No other evidence was introduced for the commonwealth except the justice of the peace before whom appellant was tried on the 3rd day of August, 1925. He produced and read to the jury the judgment of conviction in his court.

The appellant testified in his own behalf and denied all that had been testified to by the witness, Taylor, except as to the finding of the whiskey. He stated that he did not know anything about the liquor; that he had stayed there with the people and the whiskey got in there while he was gone from home, that he was not there and knew nothing about how it got there. He also stated that the lady of the house had a key to his trunk and used it whenever she got ready, and he laid particular stress on the fact that she had used his trunk all the time while he was in jail during the preceding year. Appellant in his testimony refers to the man of the house and the lady of the house, but he does not give any names, and, therefore, we are without information as to the ownership or occupancy of this house. It appears vaguely that appellant occupied the room in which the trunk was found and that it was his trunk. At the conclusion of the evidence for the commonwealth appellant moved for a peremptory instruction in his behalf, and also at the conclusion of all the evidence, but his motion in each instance was overruled. The evidence of Taylor was objected to on the ground that the search warrant directed the searching of a certain house and that it was not sufficient authority to search a room occupied by a person other than the owner or tenant, and particularly that it did not authorize the searching of a trunk in such a room. The first instruction is erroneous because it does not require the jury to believe beyond a reasonable doubt that the offense for which he was tried in the magistrate's court was committed after March 22, 1922, the date that the Rash-Gullion Prohibition Act went into effect. There

is no evidence that the offense for which he was tried on August 3, 1925, was committed after March 22, 1922. There is nothing in the record to show when the warrant was issued, and there is nothing upon which we could base a presumption that the offense for which he was tried on August 3, 1925, was committed after March 22, 1922. The warrant may have been issued for an offense committed prior to that date and the appellant may not have been arraigned until long thereafter. There must be some evidence in the record that the first offense was committed after the said prohibition act went into effect, and if there is nothing in the record which would authorize the jury to determine that the first offense had been committed since March 22, 1922, it naturally follows that the court should have sustained a motion for a peremptory instruction in favor of the defendant so far as the felony charged was concerned. He was not entitled to a peremptory instruction directing the jury to acquit him, because the court should have given an instruction authorizing his conviction for having whiskey in his possession, although the jury might not be justified in believing from the evidence that it was a second offense for which he could be punished by confinement in the penitentiary.

The question as to the validity of the search warrant or rather the legality of the act of the officer in searching the trunk of the appellant under the search warrant is a serious question on this record. If the officer was without authority to search the trunk then there is no competent evidence connecting the appellant with the commission of the offense with which he is charged in the indictment, and the court should have directed an acquittal.

In the case of Prater v. Comlth., 216 Ky. 451, the court gave consideration to a warrant commanding the search of the automobile "now being used and occupied and controlled by John Doe." It was insisted in that case by the appellant that there was not a sufficient description of the person to make the search warrant valid. The court disposed of the contention by saying:

"That contention can not be sustained because this search warrant did not command that any person be searched, and, acting under it, the peace officers did not search the person of anyone. If the evidence used against appellant herein had been discovered by a search of his person there would per-

haps have been some force to the argument advanced by appellant that he could not be searched under a search warrant which issued for John Doe, with no other description or identification of the person to be searched. Such was not the case here, however, because the evidence used against appellant was discovered by searching the automobile and that was authorized by the search warrant because the automobile was particularly and exactly described.''

Under the authority of the case just cited the search warrant authorizing the search of the building was valid. No effort was made by the officer to search any person. It is insisted that the description of the search warrant in this case was not sufficient because there might have been more than one house No. 224. We do not deem this objection to the search warrant as well taken. If there were proof in the record showing there were other houses bearing the same number in Lynch, Kentucky, then there might be force in the argument advanced, but so far as this record is concerned there was only one house No 224 in Lynch. Appellant relies on section 10 of the Constitution of Kentucky as a protection against the search warrant used in obtaining the evidence against him, but this section affords him no basis for his complaint against the search warrant. It is very true that no warrant should issue to search ''any place or any person or thing'' without describing them as nearly as may be. A search warrant may issue authorizing an officer to search a place without any authority to search a person, or it may authorize an officer to search a person without giving him the authority to search a place. The evidence obtained by the search in this case grew, not out of the search of a house or of a person, but through the search of a ''thing,'' that is, the trunk belonging to appellant. If appellant had shown that this trunk was his and that he had the exclusive possession of it, in a proper state of case the evidence obtained through its search might be incompetent, but he testified too much for his own good. He admits that the lady of the house used the trunk and put things in it and suggests that someone connected with the house had placed the liquor in the trunk. He claimed that he had to go to someone else to get the key to the trunk when the officer called on him for a key. It is not satisfactorily shown that he had any exclusive right of occupancy to the room. If he had been

in the possession of the room with the right to occupy it and if he had been in the possession of the trunk and had exclusive dominion over the trunk, there would be a different case to determine. He appears to have been at the house which was searched, in a room of the house, and a trunk in common use was in the house, and under this state of facts we cannot hold that the evidence against him thus obtained was incompetent.

The judgment is reversed and cause remanded for proceedings consistent with this opinion.